[No. 48852-5.   En Banc.   June 16, 1983.]

*In the Matter of the Estates of*
NEAL C. WAHL, ET AL.

JOHN MONAHAN, ET AL, *Respondents*, v. CHARLES
T. SHARP, *as Personal Representative,*
ET AL, *Petitioners.*

*Jay Roy Jones,* for petitioners.

*Richard P. Blumberg* and *Mrak & Blumberg,* for respondents.

DORE, J.—The beneficiary of Neal Wahl's will appeals the Court of Appeals reversal of an order granting summary judgment in her favor. This appeal raises the issue of whether a community property agreement, which provided for immediate vesting of all separate and community property in the survivor, takes precedence over reciprocal wills which provide a person shall not be deemed to survive the testator if that person dies within 90 days.

Neal and Rose Wahl were married in 1952. In November 1962, Neal executed a will in which he bequeathed all his estate to Rose if she survived. If Rose did not survive him, Neal's will specified his estate would go to his sister, Alberta Schwartz. In October 1963, Rose executed her will in which she bequeathed her estate to Neal if he survived her. In the event he did not survive her, her will provided that her interest in real estate in Idaho, valued in excess of $75,000 would pass to Neal's mother, if she survived Rose (she did not), or Alberta Schwartz. The remainder of Rose's estate, in such case, would go to her two brothers, John and William Monahan, and to her deceased brother Joseph's six children. Both wills provided that a person would not be deemed to "survive" the testator if that person died within 90 days after the testator's death.

On September 19, 1974, the Wahls executed a community property agreement. It was a standard form agreement which provided that upon the death of either of the parties hereto,

> title to all community property as defined in the preceding paragraph shall immediately vest in fee simple in the survivor of them.

Clerk's Papers, at 147.

On the same day and within the same time frame, Rose and Neal, solely on advice of counsel, executed codicils in which they expressly reaffirmed all the provisions of their respective previous wills, and designated their attorney as alternate executor.

Rose Wahl died on January 25, 1980. Neal then attempted to write a holographic will which devised most of

their combined estates to Rose's nieces and nephews. This will was never properly executed, however, as Neal became ill. He died on March 21, 1980, less than 90 days after Rose's death.

Their attorney was appointed executor of Neal's will, and promptly advised Alberta Schwartz that she was the sole beneficiary of the estate by reason of the community property agreement. As a result, the beneficiaries under Rose's will filed a complaint and petitioned for declaration of their interest in the decedent's (Rose's) estate. At the time of the Wahls' deaths, the total estate was valued at $344,248.09. The portion of the estate claimed by Rose's relatives in the proceedings was $75,553.55, approximately 22 percent of the entire estate. In deposition, the Wahls' attorney testified that he had "no independent recollection" of drafting and discussing the codicils and community property agreement with the Wahls (Clerk's Papers, at 111), and that he "never thought of" the inconsistency of the community property agreement with the provisions of the wills (Clerk's Papers, at 115). After other depositions and affidavits were taken and filed, the court granted Alberta Schwartz' motion for summary judgment.

The Court of Appeals reversed the trial court, holding that the community property agreement must be construed together with the wills and their codicils, and the surrounding circumstances, to determine the Wahls' intent. The Court of Appeals found this to be a question of fact. *In re Estates of Wahl,* 31 Wn. App. 815, 818, 644 P.2d 1215 (1982). In a concurring opinion, Judge Roe wrote that Rose's relatives were entitled to summary judgment invalidating the community property agreement on the ground of mutual mistake. For the reasons stated below, we affirm the Court of Appeals.

■■ As a contract, a community property agreement is subject to the general rules of contract interpretation. *Norris v. Norris,* 95 Wn.2d 124, 622 P.2d 816 (1980); *In re Estate of Dunn,* 31 Wn.2d 512, 526, 197 P.2d 606 (1948). In construing a contract, the intention of the parties will be

given "great, if not controlling, weight". *Langan v. Valicopters, Inc.,* 88 Wn.2d 855, 859, 567 P.2d 218 (1977); *Kennedy v. Weyerhaeuser Timber Co.,* 54 Wn.2d 766, 344 P.2d 1025 (1959).

The intention of parties to a written contract is normally to be ascertained largely from the language of the contract. *Hastings v. Continental Food Sales, Inc.,* 60 Wn.2d 820, 823, 376 P.2d 436 (1962). The interpretation of an unambiguous contract is a question of law and may be resolved on summary judgment. *Kennewick v. Hanford Piping, Inc.,* 16 Wn. App. 660, 662, 558 P.2d 276 (1977). Documents executed together, however, are to be construed together. *Maxwell's Elec., Inc. v. Hegeman–Harris Co. of Can.,* 18 Wn. App. 358, 567 P.2d 1149 (1977). Where a contract is ambiguous, extrinsic evidence is admissible to resolve the ambiguity. *Green River Vly. Found., Inc. v. Foster,* 78 Wn.2d 245, 250, 473 P.2d 844 (1970). As the wills in the present case provided that the property of the testators would pass to the remaining spouse only where the spouse survived for 90 days, the inconsistency between the wills and the community property agreement creates an ambiguity which requires the admission of extrinsic evidence to ascertain the intent of the parties.

█ We now hold the trial court erred in granting summary judgment. There is a question of fact as to whether the Wahls were mistaken as to the effect of the language of the community property agreement. The attorney who drew up the documents testified that he did not recognize the inconsistency between the community property agreement and the wills until later. Thus, the Wahls might not have known of the inconsistency between the will codicils and the community property agreement.

Additional testimony from friends and neighbors of the Wahls shows they desired to distribute the bulk of their estates to Rose's nephews and nieces, with whom they both had a close relationship. According to testimony, the couple had a strained relationship with Schwartz, who had expressed hostility to Rose Wahl. There was also evidence

that any such distribution would be left to the discretion of the survivor. This evidence is supported by Neal's unsuccessful attempt to write a new will which devised most of their combined estates to Rose's nieces and nephews. There is, therefore, enough evidence in the record for a trier of fact to conclude Neal and Rose Wahl were mutually mistaken as to their rights to inherit under their wills and codicils, as they were not advised of the legal effect of the community property agreement executed the same day.

We affirm the Court of Appeals reversal of the trial court's summary judgment and remand for determination of all questions of fact, and application of the law in accordance with the provisions of this opinion.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., concur.